ESTATE OF Aleta V. BAILEY, By Richard OARE, Administrator and Cameron C.R. Bailey, Plaintiffs,

v.

COUNTY OF YORK, York County Children and Youth Services, and Ora G. Gruver, York County Children and Youth Services, Administrator, Individually and in her official capacity, Defendants.

Civ. A. No. 83-1167.

United States District Court, M.D. Pennsylvania.

Feb. 27, 1984.

J. Richard Oare, Jr., Wentworth Darcy Vedder, Bishop Nicklas Kauffman, York, Pa., for plaintiffs.

John B. Mancke and Douglas B. Marcello, Harrisburg, Pa., for Ora G. Gruver.

Roger T. Shoop, Thomas & Thomas, Harrisburg, Pa., for York and York County Children and Youth Services.

## MEMORANDUM

CALDWELL, District Judge.

Before the court are motions to dismiss filed on behalf of the County of York, York County Children and Youth Services (YCCYS) and Ora G. Gruver, YCCYS administrator, defendants in this civil rights action. The action was initiated by Cameron C.R. Bailey and Richard Oare, administrator of the estate of Aleta V. Bailey. Aleta Bailey, the five year old daughter of Cameron C.R. Bailey and Jo Ellen Bailey Naylor, died on February 18, 1982. At the time of her death, Aleta resided in York, Pennsylvania, with her mother, who was then separated from her father. Larry Hake, a boy friend of Jo Ellen Bailey Naylor, who sometimes lived with her, was convicted of first degree murder in connection with the death of Aleta. Jo Ellen Bailey Naylor was convicted of third degree murder in the death of her daughter.

Plaintiffs' cause of action against defendants is premised on the defendants' alleged violation of the Child Protective Services Law in the handling of the Bailey case. Specifically, it is alleged that on or about January 11, 1982, the YCCYS was advised of evidence that Aleta Bailey had been physically abused. Thereafter, it is alleged that the YCCYS, through an employee, obtained custody of Aleta Bailey and had her examined at a hospital. Examination revealed evidence of abuse and it was determined that the marks of abuse resulted

from excessive discipline by Larry Hake. The YCCYS, it is further alleged, then placed the child with her aunt, informing Jo Ellen Bailey Naylor that her daughter would be returned to her custody when she had made arrangements to have Larry Hake move from her home and to deny him access to Aleta Bailey. On January 13, 1982, Aleta Bailey was returned to her mother's custody. Defendants are alleged to be responsible for failing to ascertain that Larry Hake continued to reside with Ms. Naylor after January 13, 1982 and in following various enumerated institutional policies and procedures which are said to be defective. It is alleged that defendants' action deprived Aleta of her constitutional right to life and to counsel [1] and Cameron Bailey of his constitutional right to parenthood.

Defendants have moved for dismissal on various theories including failure to state a claim under 42 U.S.C. § 1983, immunity, statute of limitations, and others.

The Civil Rights Act provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

42 U.S.C. § 1983. Fundamental to any claimed violation of 42 U.S.C. § 1983 is that the harm result from "state action" or action taken "under color of state law." There is no doubt that the YCCYS is a creature of state law and that the plaintiff complains that the actions or inactions of YCCYS caused the death of Aleta Bailey. We must determine, initially, from the face of the complaint whether, as a matter of law, Aleta Bailey's death can be charged to

defendants in the context of a civil rights action. In this regard, we find the language of the court in *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982) instructive:

There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law. *But there is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution.* The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order.

*Id.* at 618 (citations omitted; emphasis added). *See also, Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

We are aware, however, that plaintiff asserts that rights were created and affirmative duties imposed upon the YCCYS by the terms of the statute by which it was created. We have been made aware that other courts, under similar circumstances have recognized causes of action. In *Doe v. New York City Dept. of Social Services,* 649 F.2d 134 (2d Cir.1981), for example, the court recognized a cause of action against a branch of a state foster care agency which had placed plaintiff in a foster home. Plaintiff alleged that she had been abused by her foster parent and that the foster care agency had been remiss in failing to conduct regular inspections of the foster home, as it was required to do. The court said:

Government officials may be held liable under § 1983 for a failure to do what is required as well as for overt activity here.

---

[1] The right to counsel claim is clearly inappropriate in the context of civil proceedings, as

which is unlawful and harmful.... When individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution....

When an official is charged with default in exercise of the above affirmative responsibility, there are two fundamental requisites for § 1983 liability to be imposed. The first is that the omissions must have been a substantial factor leading to the denial of a constitutionally protected liberty or property interest.... The second is that the officials in charge of the agency being sued must have displayed a mental state of "deliberate indifference" in order to "meaningfully be termed culpable" under § 1983.

*Id.* at 141.

*Doe* was distinguished in the case of *Karole K. Jensen, Administratrix of the Estate of Sylvia R. Brown v. Conrad*, CA No. 82–2061–15, 570 F.Supp. 91 (D.S.C., July 18, 1983). In that case, suit was brought on behalf of a deceased minor who allegedly died as a result of child abuse. Suit was brought against state defendants on the following constitutional theories:

(1) the failure of the Commissioner and the State and County Boards of the South Carolina Department of Social Services to promulgate guidelines for social workers dealing with abused children and to adequately train and supervise such social workers and (2) the failure of the social workers themselves to adequately protect the infant ... deprived her ... of her fourteenth amendment right not to be deprived of life without due process of law.

Complaint at ¶¶ 18 and 19, quoted at 105. The court in *Brown* appreciated, as we do, the odiousness of child abuse, but also recognized the problem of implying a constitutional deprivation by the state:

Karole K. Jensen, the plaintiff herein, presents to the court an emotionally compelling argument; child abuse is a most noxious social evil that demands serious

consideration and concerted action to stem its widespread existence. However, it has been of great concern to this court since the inception of the instant case that plaintiff's decedent, Sylvia Brown, was deprived of her life by *her parent, a private individual.* (emphasis added). As the Supreme Court has repeatedly held, purely private discriminatory conduct, although wrongful and reprehensible, is not prohibited by the fourteenth amendment.

At 106 (citation omitted).

Although the court in *Brown* noted that state statutes imposed upon the defendant agencies certain duties with respect to investigation of child abuse and subsequent provision of services, it dismissed the complaint because it failed to find sufficient nexus between any state action and the death of the child. The court observed that the statutes did not "regulate the private individual who caused the harm." *Doe* was distinguished because in that case the private entities, the foster home and foster parent, were subject to direct regulation by the state. In *Doe* in fact the court pointed out, that the state had actual legal custody of the child. By contrast, in *Brown* the state had had neither custody of the plaintiff's decedent nor direct supervisory control over the child's guardians, and the court therefore found no cause of action against the state:

[O]nce ... the state assumes custody, the state then is charged with "affirmative duties, the non-feasance of which may violate the constitution." *Doe,* 649 F.2d at 141. This court is of the opinion that while the state and county officials may have been under a legal duty to offer protective services to the custodians of abused children, absent legal custody of a child by the state, the officials had no general duty to unequivocally ensure the safety of that child twenty four hours a day.

Slip op. at 18. *See also Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481, 489 (1980); *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983);

*but see, Karole K. Jensen, Administratrix of the Estate of Michael Clark v. Conrad, et al.,* No. 82–2059–14, 570 F.Supp. 114 (D.S.C., June 16, 1983).

While we are deeply saddened and troubled by the incident described in the complaint, we are constrained to find that there was no constitutional deprivation by the state such as would support a cause of action in this court. It is true that the Child Protective Services Law imposes certain affirmative obligations on the YCCYS such as the duty to promptly investigate reports of child abuse and to initiate appropriate court proceedings, if necessary. *See* 11 P.S. § 2217. Simply stated, the obligation is one of vigilence and, when justified, of intervention. Plaintiff contends that defendants breached their statutory duty and that this breach resulted in the death of Aleta Bailey. A jury has found, however, that Aleta Bailey was killed by her mother and by Larry Hake. The defendants' alleged fault can, therefore, only be characterized as a fault of omission. We are persuaded by the cases we have discussed that the state and its agencies are only chargeable with allegedly unconstitutional conduct resulting from omissions in specific circumstances. These include instances of injuries which occur while the injured party is in the legal custody of the state and cases in which the actor whose affirmative conduct causes the harm is under the direct control or supervision of the state. The case before us presents neither of these two circumstances. Aleta Bailey was not in the legal custody of the state when the incident occurred, nor were Jo Ellen Bailey Naylor and Larry Hake, as private citizens, under the control or supervision of the state. Our conclusion implies no opinion of the propriety of defendants' actions or of whether a cause of action would exist against them in state court. We say only that a federal cause of action has not been made out under 42 U.S.C. § 1983. Because of our holding, we need not discuss the remaining issues.

An appropriate order will be entered.

ORDER

AND NOW, this 27th day of February, 1984, IT IS ORDERED that the defendants' motions to dismiss the complaint are hereby GRANTED. The complaint is hereby dismissed as to all defendants.