ROE, A MINOR, ET AL., APPELLANTS, *v.* HAMILTON COUNTY DEPARTMENT OF HUMAN SERVICES ET AL., APPELLEES.

(No. C-870506—Decided July 6, 1988.)

*Furer, Moskowitz & Mezibov* and *Marc D. Mezibov,* for appellants.

*Dinsmore & Shohl, Rebecca Hanner White, Gary D. Bullock* and *Kathleen Kernan Bedree,* for appellees.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County, Ohio.

Jane Roe and Sally Doe (appellants) are pseudonyms for two minor children who were placed in the custody of the Hamilton County Department of Human Services ("HCDHS") by order of the Juvenile Division of the Court of Common Pleas of Hamilton County. Each of the girls, through her next friend, filed a complaint against HCDHS; the Hamilton County Commissioners, individually (Joseph DeCourcy, Norman Murdock and Robert Taft II); Seth Staples, the Director of HCDHS; Gabriel Blumer, the Director of Allen House, the facility where the girls resided while under the care of HCDHS; and two unnamed employees of Allen House (collectively, "individual appellees"). The complaints alleged that the girls suffered injuries as a result of the negligence of the appellees, and that they were denied federally protected rights by state officials in violation of Section 1983, Title 42, U.S. Code.[1] The cases were consolidated by the trial court pursuant to Civ. R. 42(A).

The facts alleged by the complaints are that on or about September 21, 1985, the two girls were in the exclusive care, custody and control of HCDHS pursuant to the order of the juvenile court. The girls, ages six and eight at that time, resided at Allen House, which is a facility operated by

[1] Section 1983, Title 42, U.S. Code states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

HCDHS to house dependent children. According to the complaints, the girls were permitted to leave the Allen House grounds unattended and unsupervised by a staff member or any other adult. The girls were then sexually assaulted by an individual unconnected with Allen House or HCDHS.

Count one of the complaint alleges a state-law tort claim. It contends appellees were negligent in failing to have proper safety measures in place at Allen House which would have prevented the girls from leaving the grounds unattended. Further, it is argued that this failure was the proximate cause of the injuries suffered by the girls when they were sexually assaulted.

Count two of the complaint alleges that the same lack of safety measures caused the girls to suffer a deprivation of their liberty interest in personal security without due process of law, in violation of the Fourteenth Amendment to the United States Constitution; that they were made to suffer cruel and unusual punishment in violation of the Eighth Amendment; and that they were denied their right to "family integrity" as guaranteed by the Ninth and Fourteenth Amendments.

Prior to filing their answer, appellees moved to dismiss count two in its entirety and to dismiss all of the claims against the individual appellees. Appellees argued that appellants had failed to state a claim upon which relief could be granted under Section 1983, Civ. R. 12(B)(6), and that the individual appellees were immune from suit. The trial court granted the motion and entered final judgment on those claims, finding that there was no just cause for delaying an appeal. Civ. R. 54(B). Accordingly, appellants perfected an appeal to this court.

In the first of their two assignments of error, appellants contend the trial court erred in dismissing the Section 1983 claim. Essentially, appellants claim that appellees' failure to have sufficient safety measures in place at Allen House was grossly negligent, wanton and reckless, and that their allegations were sufficient to state a Section 1983 claim upon which relief might have been granted.

It is important to keep in mind that the claims were dismissed for failure to state a claim pursuant to Civ. R. 12(B)(6). The Supreme Court of Ohio has held that a complaint should not be dismissed for failing to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, citing *Conley* v. *Gibson* (1957), 355 U.S. 41. Further, in determining whether a motion to dismiss for failure to state a claim should be granted, the material allegations of the complaint are taken as admitted. *State, ex rel. Alford,* v. *Willoughby Civil Service Comm.* (1979), 58 Ohio St. 2d 221, 12 O.O. 3d 229, 390 N.E. 2d 782.

Accordingly, this court must determine whether the allegations contained in the complaint constitute a "short and plain statement of the claim showing that the pleader is entitled to relief * * *" pursuant to Civ. R. 8(A). *Wilson* v. *Riverside Hosp.* (1985), 18 Ohio St. 3d 8, 18 OBR 6, 479 N.E. 2d 275. The purpose of the rule is to notify the defendant of the legal claim against him. *Wilson, supra.* Thus, in *Border City S. & L. Assn.* v. *Moan* (1984), 15 Ohio St. 3d 65, 15 OBR 159, 472 N.E. 2d 350, our Supreme Court reversed a Civ. R. 12(B)(6) dismissal of a malicious prosecution claim where the complaint alleged only that the defendant had intentionally inflicted harm on the plaintiff as a result of filing numerous lawsuits. While the court

acknowledged that the plaintiff would have to prove during trial that the lawsuits were instituted maliciously, without probable cause and generally that the suits were terminated in plaintiff's favor, the complaint was not fatally defective because each element of the cause of action was not set forth with "crystalline specificity." *Id.* at 66, 15 OBR at 161, 472 N.E. 2d at 352.

Motions to dismiss are viewed with disfavor by Ohio courts and are rarely granted. *Wilson, supra.* The general purpose is simply to provide notice, and the test is designed to be a difficult standard for movants to surmount. With this view in mind, we turn to the particular allegations ·of this complaint.

The critical portion of the complaint states as follows:

"On numerous occasions minors who are temporarily placed at the Allen House were permitted to leave the premises unattended and without supervision.

"Despite repeated instances of such 'walk aways' and disappearances of residents from the facility for both short (hours) and long (days) duration, and with the knowledge that such incidents were not isolated and posed substantial risk of harm to many if not all of the juveniles entrusted to the care, custody and control of the Allen House, Defendants failed to propose, adopt, effectuate or enforce measures which were likely to reasonably assure the residents' safety."

Further, the complaints averred that appellants' injuries were due to the "gross negligence, wantonness, and recklessness" of appellees.

A complaint alleging a Section 1983 claim must meet two basic requirements. First, there must be an allegation that the act (or failure to act) was performed by someone under color of law. Second, the act (or failure to act) must have deprived the plaintiff of a federally protected right. See *Cooperman* v. *Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St. 3d 191, 513 N.E. 2d 288, citing *Gomez* v. *Toledo* (1980), 446 U.S. 635.

The ·complaints here in question sufficiently allege that the actions, the lack of proper security measures, were performed by individuals acting under color of law. It is not seriously contended that the alleged failures of the appellees, all state officials, were not performed according to their official functions. While the attacker was not a state employee, that is immaterial to the claims because of the close nexus between the alleged lack of proper security measures and the injuries.

The United States Supreme Court has specifically held that mere negligence on the part of state officials is not actionable in a Section 1983 claim as a denial of due process, stating that the Fourteenth Amendment's Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of life, liberty or property. *Daniels* v. *Williams* (1986), 474 U.S. 327. The court, however, specifically declined in *Daniels, supra,* to consider the question "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protection of the Due Process Clause." *Id.* at 334, fn. 3.

Appellants urge us to follow the decision in *Nishiyama* v. *Dickson County* (C.A.6, 1987), 814 F. 2d 277, where the Sixth Circuit Court of Appeals, sitting *en banc,* held that gross negligence was sufficient to state a Section 1983 claim for a violation of the right to life contained in the Due Process Clause of the Fourteenth Amendment. While we recognize the strong arguments which can be made that Section 1983, by its terms, only contemplates intentional conduct, we hold that some actions involving

something less than intentional conduct may invoke the protection of the Due Process Clause.

In deciding this we are guided by the Ohio Supreme Court's decisions in *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608, 23 O.O. 3d 504, 433 N.E. 2d 572, certiorari denied (1982), 459 U.S. 857, and in *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489. When one acts in a manner which is substantially certain to cause injuries to another, then regardless of the actor's actual intent, he "is treated by the law as if he had in fact desired to produce the result." *Van Fossen, supra,* at 117, 522 N.E. 2d at 504. We believe this is in complete accord with the Sixth Circuit's decision in *Nishiyama, supra,* when that court stated that a person may act in such a way as to trigger a Section 1983 claim if he "* * * intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." *Nishiyama, supra,* at 282.

We find that appellants have stated a claim for which relief can be granted under the Fourteenth Amendment because an individual's liberty interest in personal security cannot be abridged without due process of law. There is a well-established, protected constitutional right to be free from

bodily harm, which is derived from the liberty interests in personal security. *Ingraham* v. *Wright* (1977), 430 U.S. 651, 673; see, also, *Youngberg* v. *Romeo* (1982), 457 U.S. 307; *Estate of Bailey* v. *County of York* (C.A.3, 1985), 768 F. 2d 503; *Stokes* v. *Delcambre* (C.A.5, 1983), 710 F. 2d 1120; *Doe* v. *New York City Dept. of Social Services* (C.A.2, 1981), 649 F. 2d 134, certiorari denied *sub. nom. Catholic Home Bureau* v. *Doe* (1983), 464 U.S. 864; *Hall* v. *Tawney* (C.A.4, 1980), 621 F.2d 607; *Withers* v. *Levine* (C.A.4, 1980), 615 F. 2d 158; *Spence* v. *Staras* (C.A.7, 1974), 507 F. 2d 554; *Stoneking* v. *Bradford Area School Dist.* (W.D. Penn. 1987), 667 F. Supp. 1088; Annotation (1986), 79 A.L.R. Fed. 514. Accordingly, the complaint alleges that it was substantially certain someone's failure to act, under "color of law," was responsible for the children suffering a deprivation of a federally protected right as required by *Cooperman, supra.*[2]

Appellees wish us to follow the Sixth Circuit's decision in *Jones* v. *Sherrill* (C.A.6, 1987), 827 F. 2d 1102, which holds that the factual allegations of the complaint must be examined to determine if the conduct alleged in the complaint rises to the level of "gross" negligence rather than merely stating "simple" negligence. We decline to follow this rule because we think it is in conflict with the concept of "notice" pleading adopted by the Ohio Supreme Court.[3] As we noted earlier, it is not

---

[2] There are serious questions regarding appellants' cruel-and-unusual punishment claims and their "family integrity" claims. We note that appellants did not argue their Eighth Amendment claims in their brief before us; however, we find that the complaints do state a claim under the Due Process Clause and that alone requires reversal.

[3] We note the Ohio Supreme Court's decision in *Schulman* v. *Cleveland* (1972),

30 Ohio St. 2d 196, 198, 59 O.O. 2d 196, 197, 283 N.E. 2d 175, 176, where the court stated: "While it is true that a demurrer (now motion to dismiss) technically admits certain allegations in a petition (now complaint), it is also well established that unsupported conclusions of the complainant are not so admitted." We believe that this comment is dictum and, based upon the subsequent cases cited, not a correct statement of the law of Ohio.

always necessary to plead all the elements of a cause of action to defeat a Civ. R. 12(B)(6) motion to dismiss, and we think that it *may* be possible for appellants to prove that the nonfeasance of the appellees was such that injuries suffered by appellants were substantially certain to occur. Thus, appellants may be able to prove a set of facts entitling them to recovery.

Appellants will be required to show that appellees knew or should have known that the safety measures in place at the Allen House were so lax that appellants' injuries were substantially certain to occur. We do not, of course, make any suggestion as to the possibility of their success in that endeavor, nor do we mean to indicate that the cause is not amenable to resolution by means of a summary judgment procedure. We simply hold that the complaint does set forth a cause of action upon which relief could possibly be granted.

The second assignment of error contends the trial court erred in finding the individual appellees immune from suit.[4] It is undisputed that the individual appellees were sued only in their official capacities as representatives of Hamilton County, Ohio.

Initially, it must be made clear that two separate and distinct concepts of immunity are involved in this case. Immunity, for purposes of the federal Section 1983 claim, is solely a question of federal law. *Cooperman, supra,* citing *Hampton* v. *Chicago* (C.A.7, 1973), 484 F. 2d 602, certiorari denied (1974), 415 U.S. 917; see, also, *Martinez* v. *California* (1980), 444 U.S. 277. The immunity against suit on the state-law tort claim is created by Ohio statute and governed by R.C. 9.86.

Considering first the immunity from suit under Section 1983, we are guided by the rule that government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald* (1982), 457 U.S. 800, 818. This is referred to as a "qualified" immunity to distinguish it from the "absolute" immunity granted to the judiciary and legislators. In this case the complaints' allegations are directed against the individual appellees in an executive capacity. The county commissioners contend that they are legislators entitled to absolute immunity. The proper approach, to determine whether a state official is immune from liability under Section 1983, is to consider the precise function at issue. *Joyce* v. *Gilligan* (N.D. Ohio 1974), 383 F. Supp. 1028, affirmed without opinion (C.A.6, 1975), 510 F. 2d 973. Officials who seek an absolute exemption from personal liability must bear the burden of showing that public policy requires an exemption of that scope. *Harlow, supra,* at 808.

Therefore, whether any or all of the individual appellees are entitled to immunity from suit in this case presents issues which are not amenable to resolution by means of a Civ. R. 12(B)(6) motion to dismiss. The motion was not converted to one for summary judgment, and there is not even so much as an answer in the record before us averring that none of the individual appellees violated any clearly established constitutional or statutory provisions of which a reasonable person would have known.

---

[4] We note that the unidentified employees of Allen House, referred to as Jane and John Roes in the caption, were included neither in the motion to dismiss nor in the trial court's entry of dismissal.

126

The parties should have the opportunity to demonstrate appellees' particular functions to determine the applicable immunity standard, and, if only a qualified immunity is appropriate, they should have an opportunity to show whether any clearly established constitutional or statutory standards were violated. Whether immunity may be invoked is a purely legal issue, properly determined by the court prior to trial, *Donta* v. *Hooper* (C.A.6, 1985), 774 F. 2d 716, 719, certiorari denied (1987), 483 U.S. 1019, and preferably on a motion for summary judgment. *Harlow, supra,* at 818-819; see, also, *Mitchell* v. *Forsyth* (1985), 472 U.S. 511; *Crocker* v. *Mulligan* (C.A.1, 1986), 788 F. 2d 809; *Greenberg* v. *Mynczywor* (D.C.N.H. 1987), 667 F. Supp. 901. Where an official could be expected to know that certain conduct would violate constitutional or statutory rights, then qualified immunity does not attach. *Harlow, supra,* at 819. It was error for the trial court to dismiss the individual appellees from the Section 1983 action on the basis of immunity under federal law.

Count one of the complaint, alleging negligence, raises a state-law claim, and immunity from that claim can only be based on state law. See R.C. 9.86.[5] We have previously held that bare allegations, without more, that state officers acted to cause a plaintiff injury with malicious purpose, in bad faith or in a wanton and reckless manner, are sufficient to state a claim upon which relief can be granted, thereby defeating a claim of immunity for Civ. R. 12(B)(6) purposes. *Van Hoene* v. *State* (1985), 20 Ohio App. 3d 363, 20 OBR 467, 486 N.E. 2d 868. Therefore, the second assignment of error is well-taken.

The trial court's decision is reversed, and the cause is remanded for further proceedings consistent with this decision and law.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT, P.J., DOAN and UTZ, JJ., concur.

---

[5] R.C. 9.86 states:

"Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

"This section does not eliminate, limit or reduce any immunity from civil liability that is conferred upon an officer or employee by any other provision of the Revised Code or by case law. This section does not affect the liability of the state in an action filed against the state in the court of claims pursuant to Chapter 2743. of the Revised Code."