LYTLE, Admr., et al., Appellants,

v.

CITY OF COLUMBUS et al., Appellees.

[Cite as *Lytle v. Columbus* (1990), 70 Ohio App.3d 99.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–269.

Decided Nov. 15, 1990.

*Geneva G. Cleamons* and *James D. McNamara*, for appellants.

*Ronald J. O'Brien*, City Attorney, and *John P. Bessey*, for appellees.

PEGGY BRYANT, Judge.

This action is brought by the estate of Wayne Albert Lytle, through its administrator, Carla Lytle, who appeals a judgment of the Franklin County Court of Common Pleas sustaining defendants' motion for partial summary judgment.

Carla Lytle brought this action on behalf of the estate and in her personal capacity to recover damages for the wrongful death of her husband, Wayne Lytle. The complaint named four defendants: Officer Donald Bowers of the Columbus Police Department, Officer Tommy Randle, also of the Columbus Police Department, Dwight Joseph, Chief of Police, and the city of Columbus. The first count of the complaint asserts a claim against defendants Bowers and Randle for wrongful death under Ohio's wrongful death statute, R.C. 2125.01 *et seq.;* the second count asserts a claim against all four defendants for constitutional violations under Section 1983, Title 42, U.S.Code.

Plaintiffs' opposition to defendants' summary judgment motion is factually premised for the most part on the information contained in the depositions of Randle and Bowers. According to those depositions, on the morning of December 31, 1987, Bowers and Randle responded to an emergency at the home of Wayne and Carla Lytle. Due to the nature of the emergency call, upon arriving at the scene Bowers drew his shotgun and the two officers

entered the Lytle home. After briefly conversing with Carla Lytle, the officers learned that Wayne Lytle ("Lytle") was reacting adversely, possibly to a drug or crack cocaine; and that he had been acting erratically. They were told that Lytle had sequestered himself in the northeast bedroom, armed with a knife, and was attempting suicide.

When the officers arrived at the doorway to the bedroom, they found Lytle face up on the floor "working" and "twisting" the knife into his chest and babbling incoherently. First Bowers attempted to calm Lytle and convince him to surrender the weapon. Lytle became more agitated as time progressed, rambling about the treatment he received in the world, his condition, and his desire to die.

Since Bowers' efforts were not successful, Randle began to talk to Lytle. Lytle ceased to babble, focused on Randle, and became quiet enough to begin to listen. Randle then "lost him." Lytle calmly announced that "It's over. It's all over. I am going to do it"; he stood up and twice "jammed" the knife into his chest.

Bowers immediately sprayed mace at Lytle's face. After the macing, Lytle became even more agitated and flew into a rage, once again thrusting the knife into his chest. Lytle then stood up and shouted, "Kill me, kill me." Wielding the knife above his head, Lytle charged at Bowers, who screamed, "Don't make me shoot you." Lytle backed Bowers through the hallway into the adjacent bedroom. Bowers discharged his weapon, striking Lytle, who staggered back and fell face up in the bedroom. Randle went to an outside doorway to radio for medical assistance. Neither officer attempted to disarm Lytle, handcuff him, or check his vital signs.

Both officers believed Lytle to be dead or dying after taking the first shotgun blast. However, as Randle returned to the living room following the radio dispatch, he heard Bowers screaming, "My God, he's getting up. Stay down, man. Stay down." Lytle rose to his feet, ran from the bedroom into the hallway, and assumed a "karate stance." Neither officer saw a knife in his possession. While Randle admits he might have been able to strike Lytle at that point, he testified that, had he attempted to restrain Lytle, he would have been in the line of fire of Bowers' shotgun; and that, given the circumstances, he believed Bowers would use the gun.

Lytle then charged Bowers again screaming, "Kill me, kill me." Randle heard Bowers say "He's trying to get the shotgun." Bowers testified at one point that Lytle never had his hands on the gun; however, according to Bowers, Lytle struggled with Bowers, pulling at Bowers' arms and fingers in an attempt to dislodge the gun. Seeing the fight between Lytle and Bowers, Randle used his PR–24, a type of nightstick, in an unsuccessful attempt to

pull Lytle off his feet. As he stood up to let go of Lytle, the gun went off. Randle retreated against a wall. "Two or three heartbeats" later, the third shot went off, and Lytle fell to the floor. Medical care was immediately on the scene, but Lytle died.

Prior to trial, defendants moved for complete summary judgment as to defendants Randle, the city of Columbus, and Dwight Joseph, and for partial summary judgment as to defendant Bowers on the negligence claim and the Section 1983 claim for failure to train or supervise. The trial court granted defendants' motion as requested. Plaintiffs, on appeal, contest only the summary judgment in favor of defendants Randle and the city of Columbus.

Plaintiffs raise the following assignments of error:

"1. The trial court erred to the prejudice of the appellant in granting summary judgment to appellee Officer Tommy Randle.

"2. The trial court erred to the prejudice of the appellant in granting summary judgment to appellee City of Columbus."

The standard of review for this appeal is dictated by Civ.R. 56(C), which provides, in pertinent part:

" * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

Preliminarily, we must address a number of procedural issues raised by defendants concerning the application of the above-cited standard and the form of evidence which may be considered by this court.

With respect to the applicable standard of review, defendants assert that the United States Supreme Court has adopted a position concerning review of summary judgment which is more favorable toward the moving party. See *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. Arguing that the federal standard set forth in *Celotex, supra,* is the "better view," defendants urge this court to adopt it.

In *Celotex, supra,* the United States Supreme Court ruled that " * * * a party seeking summary judgment always bears the initial responsibility of informing the * * * court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. * * * " *Id.* at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. Once the moving party meets this initial burden, the nonmoving party bears the reciprocal burden of producing evidence which

would support a jury verdict in its favor. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. If the nonmoving party fails to make the necessary showing with respect to an essential element of its case on which it bears the burden of proof, then the moving party is entitled to a judgment as a matter of law. *Celotex, supra.* Any doubt as to the existence of a genuine issue for trial should be resolved against the moving party. *Anderson, supra.*

The *Celotex* case, relied on by defendants as "the better view," has been cited with approval by a number of Ohio courts including the Supreme Court of Ohio. See *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114, 526 N.E.2d 798; see, also, *Guth v. Huron Road Hosp.* (1987), 43 Ohio App.3d 83, 539 N.E.2d 670; *Meinze v. Holmes* (1987), 40 Ohio App.3d 143, 532 N.E.2d 170; *Hodgkinson v. Dunlop Tire & Rubber Co.* (1987), 38 Ohio App.3d 101, 526 N.E.2d 89; *Buckeye Union Ins. Co. v. Consol. Stores Corp.* (1990), 68 Ohio App.3d 19, 587 N.E.2d 391; *Seamon v. J.C. Penney Co., Inc.* (Mar. 29, 1990), Franklin App. No. 89AP-664, unreported, 1990 WL 34766. However, whether we apply the *Celotex* standard, or what defendant perceives to be a different standard under Civ.R. 56, the ultimate result in this case does not change, as discussed more fully herein.

■ Defendants also raise objections to this court's consideration of certain evidentiary items plaintiffs introduced in support of their opposition to summary judgment. Specifically, defendants object to a written report submitted by plaintiffs' expert, Isaiah McKinnon, Ph.D., which identifies several breaches of accepted police procedure during the shooting of Lytle. Defendants object for the first time on appeal and contend that because the report is not in affidavit form, it is outside the scope of evidentiary materials permitted by Civ.R. 56(C) and may not be considered. We disagree. When ruling on a motion for summary judgment, a trial court may consider documents other than those specified in Civ.R. 56(C) in support of the motion when no objection is raised. *Rodger v. McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App.3d 256, 8 Ohio App.3d 256, 456 N.E.2d 1262; *Freedom Federal Savings & Loan Assn. v. GSW Associates* (June 21, 1990), Franklin App. Nos. 89AP-1224 and 89AP-1234, unreported, 1990 WL 85140; *Cooper v. Foster* (Feb. 14, 1989), Franklin App. No. 88AP-326, unreported, 1989 WL 11941. Because defendants made no objection to the report at the trial court, they are precluded from doing so now. Defendants' argument is not well taken.

■ Defendants also raise concerns over evidence plaintiffs' counsel introduced for the first time before this court. On appeal, plaintiffs presented a ballistics report tending to show that the fatal shotgun blast occurred in Lytle's bedroom and not in the hallway, as defendants claimed. Although

that evidence may be relevant to the issues in this case, the evidence was not presented to the trial court, and therefore may not be considered by this court in reviewing the propriety of the trial court's ruling. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500.

Having disposed of the procedural and evidentiary matters, we now turn to the substantive legal questions presented by this appeal. Plaintiffs' first assignment of error concerns the trial court's granting summary judgment in favor of defendant Randle on both the state law wrongful death claim and the federal law constitutional claim.

Plaintiffs' wrongful death claim is authorized by R.C. 2125.01, which provides, in pertinent part:

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for damages * * *."

R.C. 2125.01 has been held to be procedural and remedial in nature and has been given a liberal construction by the courts. See *Kyes v. Pennsylvania Rd. Co.* (1952), 158 Ohio St. 362, 49 O.O. 239, 109 N.E.2d 503; *Burton v. DePew* (1988), 47 Ohio App.3d 107, 547 N.E.2d 995.

Dr. McKinnon's report presents evidence of the standard of care to be exercised under the circumstances presented by the confrontation at the Lytle home. Making liberal reference to the city of Columbus police training bulletin, Dr. McKinnon concludes that Randle had a duty herein to (1) evaluate the situation, (2) calm the subject, (3) obtain necessary help, and (4) restrain the subject by means of reasonable force.

According to Dr. McKinnon, the evidence demonstrates a breach of those duties. Specifically, Dr. McKinnon first concluded that the officers failed to adequately question Lytle's wife concerning Lytle's mental and drug history. Under the second prong, he noted that despite Lytle's increasing agitation, Randle persisted in talking to Lytle. Hence, rather than maintaining the status quo until help arrived, Dr. McKinnon concluded that the officers escalated the situation, culminating in the macing of Lytle. Dr. McKinnon further noted under his third point that neither officer radioed for assistance until after the fatal shots were fired. Finally, under his fourth prong, he pointed out that Randle failed to subdue Lytle by nondeadly force; that as Lytle lay motionless after being struck by the initial shotgun blast, Randle made no attempt to disarm or handcuff him even though he stood not more than a few feet away. He further noted that as Lytle assumed his "karate stance" preparing to attack Bowers for a second time, his back was toward

Randle; and that although Randle testified that there was a "strong possibility I [Randle] could have struck him," he did not.

Given the foregoing, the record allows at least an inference of default on the part of Randle.

Defendants counter by arguing that the operation of R.C. 2744.03 regarding governmental immunity presents a limit on liability. Under R.C. 2744.03, a governmental employee acting within the scope of his employment is immunized from liability arising from the negligent performance of his duties. *Pullens v. Smith* (June 27, 1989), Franklin App. No. 89AP–147, unreported, 1989 WL 71615. However, under subsection (A)(6) of this section, immunity does not apply to "actions which were with malicious purpose, in bad faith or wanton, or reckless." *Id.* Hence the issue under the state law claim of plaintiffs' first assignment of error resolves to whether Randle's conduct may be described as such.

We do not find any evidence in the record suggesting malice or bad faith; nor do we find evidence of wanton conduct, insofar as that term connotes a complete lack of care. See *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. As to whether a reasonable jury could find that Randle's conduct was reckless, the Supreme Court of Ohio in *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, 700, fn. 2, recently adopted the definition of "recklessness" found in the Restatement of Law 2d, Torts (1965), Section 501:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

Randle testified that he had been on many suicide runs in the past, that he was well aware of the extreme volatility of these situations in general, and that this particular confrontation was highly dangerous. Nonetheless, drawing all reasonable inferences in favor of plaintiffs, we find that no genuine issue of material fact exists regarding Randle's conduct under the definition of "recklessness" set forth in *Marchetti*, and that Randle is entitled to judgment as a matter of law on plaintiffs' state law claim.

Specifically, although Randle failed to obtain pertinent information on arriving at the Lytle home, the evidence indicates that Carla Lytle was hysterical at that point, believing her husband to be attempting suicide. Moreover, while Randle was ultimately unable to calm Lytle, his attempts

were not completely unsuccessful: for a time, Lytle appeared to focus on Randle, to stop babbling, and to listen to Randle's message. Finally, although Randle failed to secure Lytle, the evidence indicates that after the first shot, believing Lytle to be dead or dying, Randle went to the doorway to radio for medical assistance. During the struggle which occurred thereafter, Randle at first did not attempt to restrain Lytle under the belief that he would be in the line of fire from Bowers' shotgun; and immediately before the second and third shots, Randle attempted to secure Lytle with less than deadly force by using his PR–24. Even if the foregoing demonstrates negligence in Randle's handling the situation at the Lytle home, given all reasonable inferences in plaintiffs' favor, the evidence does not demonstrate the requisite recklessness to sustain a state law claim against Randle. The trial court properly granted summary judgment in favor of Randle on plaintiffs' state law claim.

Plaintiffs' federal claim against Randle is based on Section 1983, Title 42, U.S.Code, which provides, in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * * "

█ A successful claim under Section 1983 requires plaintiffs to prove that defendants acted under color of state law; that defendants' actions deprived Lytle of his rights, privilege, or immunities guaranteed by the Constitution; and that defendants proximately caused Lytle's deprivation. *Parratt v. Taylor* (1981), 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428; *St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 35, 550 N.E.2d 456, 459.

Preliminarily, we note that plaintiffs' complaint as to Randle alleges that "defendants, Randle and Bowers, came to Plaintiff's home. They entered the home and subsequently caused the wrongful death of Mr. Lytle, by shooting him with a shotgun. The shooting was done negligently, recklessly and/or maliciously." Further, in paragraph seventeen of the complaint, plaintiffs allege that "said acts by Defendants constitute violations of 42 U.S.C. Section 1983, and plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution." As a result, as defendants argued before the trial court, plaintiffs' complaint does not assert that Randle's liability is predicated on his failure to act, but in his shooting. Inasmuch as Randle did not shoot Lytle, defendants contend that summary judgment properly was granted in favor of Randle. However, in arguing against defendants' motion for partial summary judgment, plaintiffs asserted that Randle was liable for

his nonfeasance. Further, plaintiffs filed in the trial court a motion to amend their complaint to that effect. Considering all of the foregoing, we address the issue before us as argued before the trial court, and not based solely on the allegations in plaintiffs' complaint.

Plaintiffs' complaint asserts that the Section 1983 action against defendants is premised on the Fourth and Fourteenth Amendments; and in plaintiffs' response to defendants' motion for partial summary judgment, plaintiffs assert that defendants' actions constitute a violation of Lytle's Fourth Amendment rights.

To the extent plaintiffs' contentions are premised on a Fourteenth Amendment substantive due process argument, we note that "mere negligence on the part of state officials cannot state a claim for a due process violation under section 1983 * * *"; "due process 'is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.'" *Jones v. Sherrill* (C.A.6, 1987), 827 F.2d 1102, 1106, citing *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662. In *Jones*, the Sixth Circuit determined that facts supporting a claim of "gross negligence" are sufficient to state a 1983 claim if they are sufficient to charge the government officials with outrageous conduct or arbitrary use of government power.

At least one Ohio court has suggested that, in actions of this nature, when a government official "acts in a manner which is substantially certain to cause injuries to another, then regardless of the actor's actual intent, he 'is treated by the law as if he had in fact desired to produce the result.'" *Roe v. Hamilton Cty. Dept. of Human Serv.* (1988), 53 Ohio App.3d 120, 124, 560 N.E.2d 238, 242, citing *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 492. Accordingly, in *Roe*, the First District Court of Appeals determined that "a person may act in such a way as to trigger a Section 1983 claim if he ' * * * intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow.'" *Id.* 53 Ohio App.3d at 124, 560 N.E.2d at 242, citing *Nishiyama v. Dickson Cty., Tennessee* (C.A.6, 1987), 814 F.2d 277, 282.

Whether we apply the language of *Jones* or *Roe*, we find that reasonable minds could only conclude under the facts present herein that the actions of Randle do not rise to the level of a constitutional tort violating Lytle's substantive due process rights. While an officer's failure to act may properly form the predicate for 1983 liability, see *Byrd v. Clark* (C.A.11, 1986), 783 F.2d 1002; *Byrd v. Brishke* (C.A.7, 1972), 466 F.2d 6, Randle's failure to act

herein, as delineated under the discussion of plaintiffs' state law claim, does not rise to the level of gross negligence, outrageous conduct, or arbitrary use of government power.

■ To the extent plaintiffs rest on the Fourth Amendment to support their Section 1983 claim, plaintiffs contend that Randle's failure to act was the direct and proximate cause of the unjustified use of excessive force leading to plaintiff's wrongful death.

In *Graham v. Connor* (1989), 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443, the Supreme Court held that all claims of excessive force by officers in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment's objective reasonableness standard rather than under a substantive due process approach. Therein, the Supreme Court stated that the standard lacks a precise definition or mechanical application; rather, as the court stated:

" * * * [I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. * * * " *Id.* at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455.

However, the Supreme Court cautioned:

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. * * * The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397, 109 S.Ct. at 1872, 104 L.Ed.2d at 455–456.

Given the facts and circumstances the Supreme Court indicated are properly considered in Fourth Amendment "seizure" cases, we question whether the facts herein present a proper case for Fourth Amendment analysis. In particular, the officers approached the Lytle home with no intent of apprehending Lytle; and, while Bowers admitted that Lytle committed illegal acts during the course of the incident, the record does not indicate that the officers' intent changed.

However, even if we characterize plaintiffs' claim as a Section 1983 claim premised on the Fourth Amendment, the facts herein, with all reasonable inferences drawn in plaintiffs' favor, fail to support plaintiffs' contentions that Randle is liable thereunder. Even if Randle was negligent in failing to act,

those failures, as delineated and discussed under plaintiffs' state law claim, do not violate an objective reasonableness standard under the facts and circumstances herein. The trial court properly granted summary judgment in favor of Randle on plaintiffs' Section 1983 claim.

Given the foregoing, plaintiffs' first assignment of error is overruled.

■■■ Plaintiffs' second assignment of error involves a claim under Section 1983 against the city of Columbus based on an alleged failure to train and supervise the officers involved in the incident. "[T]he inadequacy of police training may serve as the basis for 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into account." *Canton v. Harris* (1989), 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412, 427. " * * * Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. * * *" *Id.*, 489 U.S. at 389, 109 S.Ct. at 1205, 103 L.Ed.2d at 427. Indeed, " * * * where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be held liable for such a failure under § 1983." *Id.*

As the Supreme Court noted in *Canton v. Harris, supra,* the issue is whether the training program is adequate; if it is not, " * * * the question becomes whether such inadequate training can justifiably be said to represent 'city policy.' " *Id.* at 390, 109 S.Ct. at 1205, 103 L.Ed.2d at 427. As a result, to resolve the issue of the city's liability " * * * the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. * * *" *Id.* at 390, 109 S.Ct. at 1205–1206, 103 L.Ed.2d at 428.

Being unable to premise their claims for the city's liability on the theory of *respondeat superior,* see *Monell v. New York City Dept. of Social Services* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, plaintiffs rely on the evidence derived from the officers' deposition testimony and the report from Dr. McKinnon to support their contentions that the city failed to adequately train and supervise. In particular, plaintiffs point to evidence in the record which suggests that trained negotiators were not assigned to the precinct at issue; and they further note Dr. McKinnon's conclusion that the city's failure to train and supervise Randle was a causal factor in the death of Lytle, as well as the fact that Randle's supervisor failed to appear until after all shots were fired, or about ten to fifteen minutes after being called. In response, defendants note other portions of the record which suggest that the officers received ongoing training, including instructions dealing with mentally ailing

persons. Further, the city filed in support of its motion various police bulletins outlining the instructions and training given to officers.

While the depositions of Randle and Bowers reveal a less than clear memory of their training, to the extent Randle failed to absorb the training and supervision which was otherwise adequate, that failure will not generate municipal liability. *Canton v. Harris, supra.* Moreover, Section 1983 does not permit the inference of the existence of a city policy from the misconduct of a single officer or incident of misconduct. *Oklahoma City v. Tuttle* (1985), 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791. Nor does the fact that a particular officer may be unsatisfactorily trained " * * * alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. * * * Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training * * *." *Canton v. Harris, supra,* 489 U.S. at 391, 109 S.Ct. at 1206, 103 L.Ed.2d at 428.

Applying the foregoing to the evidence before us, we note that, apart from being unsupported by underlying facts as required under Civ.R. 56, Dr. McKinnon's report arguably contradicts earlier portions of his report wherein he cites Columbus police training bulletins as evidence of Randle's deviation from standard police procedure. Moreover, to the extent Dr. McKinnon's conclusion regarding inadequate training is based on the conduct of Randle and Bowers, it is legally insufficient. Similarly, the failure of Randle's supervisor in this instance is an insufficient basis for liability against the city.

Finally, the record does not suggest that the city's failure to assign trained negotiators to Lytle's precinct means that such negotiators could not respond therein; and the record does not support an inference that such a failure to assign amounts to a deliberate indifference to the rights of the city's inhabitants. Plaintiffs' second assignment of error is overruled.

Having overruled both assignments of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and FAULKNER, JJ., concur.

DAVID C. FAULKNER, J., of the Hardin County Court of Common Pleas, sitting by assignment.