NEELY, Appellant,

v.

**FRANKLIN COUNTY AUDITOR; FRANKLIN COUNTY BOARD OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES, Appellee.**

[Cite as *Neely v. Franklin Cty. Aud.* (1994), 97 Ohio App.3d 771.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE05–700.

Decided Dec. 1, 1994.

*Handelman & Kilroy, Robert K. Handelman* and *Cathy J. Levine,* for appel-lant.

*Crabbe, Brown, Jones, Potts & Schmidt* and *John C. Albert,* for appellee.

---

CLOSE, Judge.

Plaintiff-appellant, Maurice Neely ("Neely"), appeals the decision of the Franklin County Court of Common Pleas, awarding summary judgment in favor of defendant-appellee, Franklin County Board of Mental Retardation and Developmental Disabilities ("MRDD").

The relevant facts are as follows. In February 1990, Neely entered the employ of MRDD in the capacity as a bus driver. The job required that Neely transport handicapped children to and from school and provide them with assistance on the bus. Neely's work day was divided into a morning and an afternoon route, each taking approximately one and one-half hours to complete. As a general rule, drivers were not on duty during the interim between routes.

During his employment, Neely received a manual in which MRDD set out its policies and procedures. Neely acknowledged that he understood the manual and the rules therein. Contained in that manual was a policy prohibiting employees from "[t]he use, possession or sale of unlawful drugs or narcotics on agency premises or property. The use, possession or sale of unlawful drugs or narcotics during working hours." *The manual further specified that violation of this policy could result in discharge from employment.*

In the fall of 1990, MRDD hired a private security company to investigate suspicions that employees were violating the drug-free policy. As a part of that investigation, the company positioned Yvette Davis ("Davis") to pose undercover as a school bus assistant. During the course of her assignment, Davis reported a number of occasions in which Neely spoke of his marijuana use. Further, Davis witnessed and participated in drug use with Neely both on MRDD property and during the interim between routes.

In response to a particular accusation of drug use, Neely admitted to having smoked marijuana on an MRDD bus after completion of his morning route. Neely stated that he, Davis, and an individual named J.R. took an MRDD bus to lunch when Davis "rolled a marijuana stick [and] fired it up." He stated that the three of them shared the marijuana cigarette on the bus while driving to lunch.

On March 8, 1991, MRDD confronted Neely with its information about his drug use. At that meeting, Neely was given the option of either resigning or undergoing the discipline process. Neely testified that, when given this choice, he resigned out of fear that a drug-related termination would jeopardize his

future employment opportunities. On March 8, 1993, Neely filed a complaint containing allegations of race discrimination and breach of the contract of employment. Specifically, Neely alleged that MRDD's actions were racially motivated in that MRDD primarily targeted black employees for investigation and offered white offenders the less severe option of rehabilitation.

Thereafter, MRDD filed a motion for summary judgment. By its decision and journal entry dated March 23, 1994, the trial court awarded summary judgment in favor of MRDD and dismissed the case. Neely now appeals, raising the following assignments of error:

"I. The trial court erred in denying the appellant an opportunity to establish that he was terminated because of race discrimination and that the proffered reason for his discharge was pretextual."

"II. The trial court erred in granting MRDD's motion for summary judgment on plaintiff's breach of contract and promissory estoppel claims."

Since both assignments of error challenge the propriety of summary judgment, we initially note that trial and appellate courts are held to the same standard, namely, that if reasonable minds can come to differing conclusions after consideration of the facts in the light most favorable to the nonmoving party, the motion should be denied. *Lytle v. Columbus* (1990), 70 Ohio App.3d 99, 590 N.E.2d 421. Additionally, a reviewing court may not grant summary judgment under Civ.R. 56(C) unless the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. The nonmoving party, however, must do more than simply resist the allegations contained in the motion. Rather, that party must affirmatively set forth the facts which entitle him to relief. *Baughn v. Reynoldsburg* (1992), 78 Ohio App.3d 561, 563, 605 N.E.2d 478, 480, construing *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

By his first assignment of error, Neely challenges that the award of summary judgment denied him the opportunity to establish that MRDD's actions were racially motivated. This assignment is raised in response to the trial court's determination that, because Neely admitted to using marijuana on MRDD property, he could not, as a matter of law, prove that the employer's proffered reason for termination was a pretext for discrimination.

Neely's claim of race discrimination was brought under R.C. 4112.02, which provides, in pertinent part:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of race * * * to discharge without just cause * * * or otherwise to discriminate against that person with respect to hire,

tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

In addressing claims brought under this provision, it is now well settled that case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128. With this in mind, the framework under which we evaluate the instant case is largely established by the United States Supreme Court decision in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

The initial question under the *McDonnell Douglas* scheme is whether the claimant has established a prima facie case of discrimination. The prima facie case requires a showing that (1) the complainant belongs to a racial minority; (2) the complainant is qualified for the job; (3) the complainant was discharged; and (4) the position remained open after the complainant's departure. *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678. In response to Neely's appeal, MRDD urges this court to find summary judgment proper in light of Neely's failure to establish every element. Specifically, MRDD asserts that Neely failed to make the requisite showing that he was discharged from employment.

The trial court was presented with evidence that Neely voluntarily resigned his position at MRDD. In contrast, Neely claimed that his departure, while technically a resignation, was more akin to a constructive discharge in that the only alternative was termination. This distinction is not specifically addressed in the trial court's discussion of this issue. However, given the fact that the court continued its analysis beyond establishment of a prima facie case, our reading of that decision indicates that the court found the threshold elements of Neely's case to have been met. For that reason, we continue our analysis as it applies to the merits of the instant appeal.

Once a prima facie case is established, a presumption arises that the complainant was unlawfully discriminated against. That presumption, however, is rebuttable in that the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. *Id.*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678; *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207, 215.

In the instant case, MRDD explained that Neely was fired for violation of its drug-free policy. While Neely's drug use generally took place during the interim when he was "off the clock," it is undisputed that Neely engaged in the use of drugs on MRDD property. Further, it was asserted that Neely remained affected by his marijuana use beyond his break between routes. For that reason,

MRDD posited that Neely's drug use interfered with his ability to perform his duties in a safe manner.

Having provided a legitimate, nondiscriminatory reason for its employment action, the burden returned to Neely to produce evidence that MRDD's explanation was merely a pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 678–679; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–1094, 67 L.Ed.2d at 215. Neely claims that he was denied this opportunity by the award of summary judgment in MRDD's favor. In support of his position, Neely relies on specific *Burdine* language which provides that, once the employer meets its burden, the complainant must have the full and fair opportunity to demonstrate, through the presentation of its case, that the proffered reason was not the true reason for the employment decision.

In citing this language, Neely urges that the award of summary judgment denied him the opportunity to establish that the explanation offered by MRDD was merely pretextual. Neely argues that such pretext is evident by the fact that white violators of the same drug-free policy were treated with more leniency than black offenders. Specifically, Neely asserts that white offenders were given the option of retaining their jobs upon entering a rehabilitation program. Although Civ.R. 56 does not expressly mention "inferences," the cases leave no doubt that the inferences to be drawn from the underlying evidentiary materials submitted by the parties must be viewed by the trial court in the light most favorable to the nonmoving party. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311; *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118. In that light, there is presented at least a colorable showing that the differential treatment was pretextual. As to this specific inference, a disputed fact does exist, *i.e.,* people of different races were disciplined differently; summary judgment was improperly granted. Appellant's first assignment of error is sustained.

By his second assignment of error, Neely asserts that the trial court erred in granting summary judgment on the claims of breach of contract and promissory estoppel. In making its award, the trial court determined that Neely could not prevail on his claims after admitting violation of MRDD's drug-free policy. Despite his admitted violation, Neely claims that the failure of MRDD to provide him with a predisciplinary conference before discharge, or to offer him participation in its drug rehabilitation program, violated both his contract of employment and oral promises made by MRDD. For the following reasons, we disagree.

Initially, we note that Neely resigned his employment with MRDD. The evidence before the trial court indicated that Neely submitted his resignation in

order to avoid the negative implications that a termination proceeding would have on his future employability. However, by his argument on appeal, Neely now asserts deprivation of the very process which he purposefully and voluntarily avoided. Upon Neely's resignation, MRDD clearly had no further obligation to suggest either a predisciplinary conference or participation in its drug rehabilitation program. Therefore, it could not have committed a breach by any failure to do so.

For that reason, Neely now urges that his departure from employment was more akin to a constructive discharge than a resignation. However, the court found that *even assuming* Neely was constructively discharged, his use of illicit drugs on MRDD property constituted just cause for termination. The penalty for violation of MRDD's drug-free policy was specifically set out in MRDD's manual and provided that disciplinary actions were available "up to termination." Therefore, even if a formal termination process had been employed, Neely's admitted policy violation produced the same result.

In light of the fact that Neely's departure from employment would necessarily have resulted from either a resignation or a discharge, this factual distinction did not rise to the requisite materiality necessary to defeat a motion for summary judgment. For that reason, the trial court did not err in granting judgment in favor of MRDD on Neely's claims of breach of contract and promissory estoppel. Neely's second assignment of error is overruled.

For the foregoing reasons, appellant's first assignment of error is sustained, and appellant's second assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WHITESIDE, P.J., and BOWMAN, J., concur.