GAMMON, ADMR., Appellant,

v.

CITY OF EUCLID et al., Appellees.

[Cite as *Gammon v. Euclid* (1996), 113 Ohio App.3d 256.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69549.

Decided Aug. 5, 1996.

*James G. Corrigan* and *Mark Immormino,* for appellant.

*Deborah Wenner LeBarron,* Euclid Director of Law, for appellees.

KARPINSKI, Judge.

Plaintiff-appellant, Lynn Gammon, the administrator of the estate of Jason Gammon, appeals from the judgment of trial court which granted summary judgment to defendants—the city of Euclid and six named police officers. Plaintiff sued the city and the officers after Euclid police shot her son, who had barricaded himself and two others in a house in Euclid. On appeal, plaintiff challenges the trial court's judgment on the merits, as well as on procedure, because the trial court granted summary judgment to the named police officers even though they did not specifically move for summary judgment. A review of the record compels us to affirm in part and reverse in part.

The events of this case occurred on September 3, 1993, when the police received two tips: (1) that Jason Gammon, Bridget Lewis, and Brian Lewis had firearms in their possession and (2) that the three minors intended to "shoot some cops." All the officers on duty were aware of this information, which came from Bridget and Brian's parents. The police also received a call from a resident who stated that four teenagers going through back yards on her street were claiming they were going to shoot the first cop they saw. Patrolman Hoffman then spotted four youths in the area and chased them with the assistance of other

officers. The police followed the four to a home at 19186 Abby Avenue, where the children entered through a basement door and went to the first floor apartment. The officers went into the basement and heard the teenagers in the apartment above laughing, swearing, and breaking things. After surrounding the house, the police tried to talk the teens out of the home, but the teens continued to yell obscenities and break items in the house.

At this point, the police requested the Special Weapons and Tactics ("SWAT") team. At 7:35 p.m., Brian Lewis called the Euclid Police dispatcher. While talking to the dispatcher, the fourth teen left the house and surrendered to the police. After talking to the police, the teens shot four shots out the windows of the house. Two shots hit a police car stationed near the house.

The SWAT team and the Crisis Negotiation Team ("CNT") arrived at approximately 8:00 p.m. Officer Kevin Blakely, the police negotiator, was able to talk to the teens over the telephone. Blakely talked mostly with Jason Gammon, who demanded $150,000, a helicopter, and cigarettes. The parties agreed that Blakely would throw a pack of cigarettes to the second floor window. Regarding this attempt, Blakely stated in his deposition as follows:

"It didn't work out. The cigarette being light, I throw like a girl, I didn't get it in there. I missed badly and the cigarettes bounced off the house and into the lawn next to the house.

"This upset Jason greatly. He nearly came out of the window with the long gun, was waving it around, okay. He was kicking and screaming, was raising all sorts of hell. The throw had come—the throw went I stood up, made the throw, okay, and again missed badly and they ended up over there. He came out and was raising all sorts of hell."

Blakely described Gammon's demeanor as raging with enormous energy. One of the officers then fired at Gammon, but missed him. The shot, however, caused confusion in the house and among the officers, who convinced the teens that it could have been Jason who fired the shot.

The officers then made a second attempt to get cigarettes to the teens. Blakely described this event as follows:

"Q. Then what happened?

"A. Then as I'm approaching the house, okay, Bridget and Brian have moved to the back. They're still in the kitchen, they move to the back of the room and I can see Jason from my angle, okay.

"Q. How do you know they moved to the back?

"A. Because they're not in my—I can't see them anymore. They were all right next to each other and now they're not. My line of vision is such that I can

only see him and he's right at the window showing me his hands. I'm all—I'm being covered by the SWAT guys, okay. I've already left cover and I'm walking the X number of feet towards the porch.

"Q. Then what happens?

"A. He indicates, 'Throw them up here.' I said, 'I can't. They won't get there.' I said, 'I'm going to put them by the open door like we said, okay?' I toss the cigarettes to the open door.

"At that point there is something in the window, there is some kind of a skirmish in the window. I don't know what it is, okay. He starts to bark at me, okay, 'Come back here. Come back here right now. Walk back here right now, mother fucker,' on and on. At this point I'm still moving towards cover, okay. Then I hear a shot."

The shot hit Jason Gammon. Officer Grida stated that after 'he heard Jason Gammon yelling these demands at Blakely, he saw Gammon pick up a handgun and point it out the window. Similarly, Officer Janovics stated that he too observed Gammon, after yelling at Blakely, reach out of the window and point a gun at Blakely. Officers Grida and Janovics stated that they fired at Jason Gammon because they believed that Blakely was in mortal danger.

At this point there was confusion. Leaving the house, Bridget and Brian Lewis began screaming that Jason had been shot. The police entered the house to find Jason Gammon dead on the floor with a handgun in his hand.

On October 14, 1993, plaintiff filed her complaint against the city of Euclid and twenty John Doe police officers. On June 1, 1995, Euclid filed its motion for summary judgment. Plaintiff responded on July 7, 1995, by filing simultaneously (1) a brief in opposition to the city's summary judgment motion and (2) a motion to amend the complaint to add the names of the six individual police officers as defendants.

On August 10, 1995, the trial court held oral arguments on the city's motion for summary judgment. At this hearing, the trial court, granting plaintiff's motion to amend the complaint, stated as follows:

"The first order of business is that plaintiff has filed a motion to amend the complaint to name specifically several John Does who have been identified during the discovery proceedings and to add the names of the specific police officers who were previously known as John Doe but now have been identified through the discovery proceedings and the Court is granting that motion without objection from the attorney for the defendants in this case."

Later, the court granted the motion for summary judgment and stated that it covered all the defendants. The court stated as follows:

"It is this Court's opinion—by the way, I'm going to include in this ruling all of the defendants, the newly added ones, as well as the original ones. I'm going to grant summary judgment in this case and I'm going to tell you why."

Plaintiff timely appealed raising one assignment of error, which states as follows:

"The appellants state that the final order issued in this action of August 14, 1995 (Journal Volume 877, p. 255) that granted the apellees [sic] motion for summary judgment is in error in the following respects:

"The trial court erred to the prejudice of the appellants, in granting the motion for summary judgment of all defendants with respect to the claims of the appellants brought under 42 U.S.C. 1983 (use of excessive force) failure to train and monitor and wrongful death under O.R.C. 2125.01.

"The trial court erred when it granted a summary judgment for nonmoving defendants without giving the plaintiffs a chance to refute the motion."

The first issue we will address is the propriety of the trial court's grant of summary judgment. In attempting to hold the city liable for the death of Jason Gammon, plaintiff argued that (1) the city failed to train the police officers adequately, (2) the officers used excessive force, and (3) the city is not immune from plaintiff's wrongful death claim. Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Summary judgment was properly granted for Euclid on all three of these claims.

Regarding the failure to train, in *Canton v. Harris* (1989), 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412, the Supreme Court held that inadequacy of police training may serve as a basis for Section 1983 municipal liability only when the failure to train amounts to deliberate indifference to rights of persons with whom police come into contact. To succeed on a claim of failure to train, a plaintiff must additionally identify a specific training deficiency that is the actual cause of the deprivation of plaintiff's rights. 3 Schwartz, Section 1983 Litigation: Claims, Defenses, and Fees (2 Ed.1995) 437, Section 12.5.

Plaintiff has not pled or argued any policy or custom by Euclid that amounts to a deliberate indifference to the rights of Jason Gammon. Plaintiff merely pled that the SWAT team members were inadequately trained "to preserve and protect human life in situations of armed suspect standoffs." Plaintiff's brief in opposition to Euclid's motion for summary judgment is not any more specific. Plaintiff does not present any evidence of an official policy or custom of Euclid

that showed deliberate indifference to the rights of the plaintiff. Mere allegations that the police officers were inadequately trained will not survive a motion for summary judgment. Therefore, the trial court correctly granted summary judgment for Euclid on plaintiff's claim of failure to train.

■ To succeed in her claim that Euclid used excessive force, plaintiff must establish the existence of an official policy or custom of the city that authorized excessive force, as opposed to the acts of individual officers. *Oklahoma City v. Tuttle* (1985), 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791. Plaintiff has not presented any evidence that Euclid has any such policy. Again, although plaintiff argued below and in her appellate brief that the officers used excessive force in the shooting of Jason Gammon, plaintiff has not presented any evidence of or even alleged an official policy authorizing an unconstitutional use of excessive force. Moreover, Euclid cannot be held liable for the actions of its officers on the basis of *respondeat superior*. *Pembaur v. Cincinnati* (1986), 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452. Therefore, summary judgment was properly granted for Euclid on plaintiff's claims of excessive force.

■ Finally, as to plaintiff's wrongful death claims, Euclid and its officers are entitled to immunity under the governmental immunity statute. In *Lytle v. Columbus* (1990), 70 Ohio App.3d 99, 590 N.E.2d 421, the court held that Ohio's governmental immunity statute prevents a wrongful death claim against police officers acting within the scope of their employment. Immunity applies as long as the officers' actions are not "with malicious purpose, in bad faith or wanton, or reckless." *Id.* at 106, 590 N.E.2d at 426. In the case at bar, plaintiff has not alleged any bad faith or wanton conduct on the part of the police officers or Euclid.

■ A second issue is whether the common pleas court erred by granting summary judgment to the nonmoving defendants, namely the six police officers. In this case, only Euclid moved for summary judgment. After this motion for summary judgment had been filed, the common pleas court allowed plaintiff to amend the complaint to add the names of the six police officers involved in this incident. The amended complaint states that the officers were "acting as employees of the City of Euclid and are sued in their individual capacities as well." The individual officers never moved for summary judgment.

In *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, the Supreme Court stated as follows:

"A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond."

*Mitseff* was quoted extensively by the very recent Ohio Supreme Court case on summary judgment, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, at 294, 662 N.E.2d 264, at 274–275. A review of these two cases emphasizes that the moving party carries the initial burden of establishing the basis for summary judgment regarding a specific party or claim. An earlier Supreme Court case, *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 585 N.E.2d 384, is more specific in holding that summary judgment cannot be granted on an issue when a party does not specifically move for summary judgment on that issue. The *Bowen* court stated, at 94, 585 N.E.2d at 393, as follows:

"The final issue before us is whether the court of appeals correctly determined that appellees were not entitled to summary judgment on the negligent infliction of emotional distress claims by Bowen's wife and children. We agree with the court of appeals' determination that since appellees never moved for summary judgment on the negligent infliction of emotional distress claims of Bowen's wife and children, appellees were not entitled to summary judgment on these claims. This conclusion is merely a logical extension of our holding in *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335, syllabus, and is supported by our holding in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus."

Responding to this argument, Euclid argues that plaintiff did not object at oral argument when the trial court included the individual officers in the decision to grant summary judgment for defendants. Whether plaintiff objected at the hearing, however, is irrelevant to the issue of whether the individual officers met their initial burden under the summary judgment standard.[1] The Ohio Supreme Court has recently held:

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its

---

1. Cf. *Carrabine Constr. Co. v. Chrysler Realty Corp.* (1986), 25 Ohio St.3d 222, 25 OBR 283, 495 N.E.2d 952, syllabus: "A trial court is precluded from considering supplemental oral testimony introduced for the first time at a hearing on a motion for summary judgment under Civ.R. 56."

initial burden, the motion for summary judgment must be denied." *Dresher* at 293, 662 N.E.2d at 274.

The individual officers never presented any evidence to demonstrate affirmatively that the plaintiff had no evidence to support her claims. More important, the failure of the individual officers to move for summary judgment prevented the plaintiff from having a meaningful opportunity to respond to the argument of individual police officers, whose liability is based on a standard different from that of the city. *Mitseff, supra.*

Under a Section 1983 cause of action against an individual police officer defendant, a court must engage in an analysis that is distinct from that of the municipal defendant. *Lytle v. Columbus* (1990), 70 Ohio App.3d 99, 590 N.E.2d 421. The *Lytle* court cited *Graham v. Connor* (1989), 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443, which held that claims of excessive force brought against an individual police officer must be analyzed under the Fourth Amendment's objective-reasonableness standard. The *Lytle* court then went through a different analysis of the city's liability under Section 1983. The court observed that, under *Canton v. Harris* (1989), 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412, and *Monell v. New York City Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, a municipality's liability depends upon the existence of a city policy as opposed to the conduct of an individual officer.

Accordingly, the decision of the trial court regarding Euclid is affirmed; the case is remanded to allow the individual officers, if they choose, to move for summary judgment and to afford the parties the opportunity to brief the remaining issue of the individual officer's liability.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BLACKMON, P.J., and PATTON, J., concur.