OPINION
Ginger Ross Austin is appealing from the entry of summary judgment against her and in favor of United Dairy Farmers by the trial court. The nature of the case, the pertinent facts, and the legal analysis by the trial court are succinctly set forth in its decision, as follows:
 I. FACTS On May 28, 1998, the Plaintiff, an African-American, filed her Complaint alleging that the Defendant discriminated against her in violation of O.R.C. sec. 4112, et seq. The Plaintiff claims that the discrimination manifested itself in two ways: (1) that the Defendant failed to eradicate the racially hostile environment in which she worked while employed with the Defendant and (2) that the Defendant failed to promote her to positions for which she was qualified while filling them with Caucasians who were less qualified. Subsequently, the Defendant filed a Motion for Summary Judgment asserting that the claims against it are without merit and its motion should be sustained.
 The Plaintiff was hired by the Defendant as a sales clerk at its store located in Kettering, Ohio, in 1994. In late 1995, she took the examination for the Assistant Manager position and was promoted to that position that same year. On April 15, 1997, the Plaintiff provided the Defendant with two weeks notice of her resignation and was removed from the Defendant's payroll on May 5, 1997.
 The positions at each of the Defendant's stores are: (1) store clerk, (2) shift leader, (3) Assistant Manager, (4) First Assistant Manager, and (5) Store Manager. At the time of Plaintiff's resignation the store manager was Judy Romans. Robert Hodges was the first assistant manager and the Plaintiff was the assistant manager. The district supervisor, who receives reports from the store manager, was Dan Chambers; the zone manager, who receives reports from the district supervisor, was Randy Welch; and the Vice President of store operations, who receives reports from the zone manager, was Frank Cogliano. Furthermore, when the Plaintiff resigned the other employees with more seniority than her were Romans, Hodges, Bill Ziegler and Charles Marshall (both [sic] Caucasian). Romans and Hodges were the only two of these four in positions ahead of the Plaintiff, and they had been placed there due to their efforts of working their way up through the chain of command.
 The day that the Plaintiff gave her notice of resignation Welch attempted to contact her numerous times, and finally was able to arrange a meeting with the Plaintiff on April 18, 1997. The Plaintiff told Welch that she felt that Chambers and Romans were discouraging her from becoming a manager trainee. She felt this was because they had informed her that after her training period as a first assistant manager was complete, she would have to work four nights a week and remain a first assistant manager until a store manager position became available. Welch told the Plaintiff that Romans and Chambers were not discouraging her, they were telling her the truth. Welch informed the Plaintiff that if she was interested in being promoted to manager trainee or to first assistant manager, he would do so right then and there. Plaintiff declined.
 Welch then asked the Plaintiff what her concerns were. The Plaintiff related to Hodges' comments in which she perceived to be racially derogatory. Welch told the Plaintiff that he would speak to Hodges immediately and apprise him that any further use of such comments would be grounds for termination. Welch also told Romans and Chambers to instruct Hodges of the same. Welch concluded the conversation with the Plaintiff by telling her that she was a valued employee and he would accommodate her in any way possible. He offered her a promotion to manager trainee or first assistant manager, he offered her a transfer to another store and he informed her she was welcome to stay at Store 217.
 Immediately after the meeting, Welch called Chambers and told him to counsel Hodges concerning the comments directed towards the Plaintiff. Welch also spoke to Hodges directly the following morning. He told Hodges that further inappropriate comments would not be tolerated and he told Romans not to allow any such language from her crew.
 Approximately two weeks later, the Plaintiff called Cogliano and related to him the concerns she had expressed to Welch. Cogliano informed the Plaintiff that the company did not want her to leave, and that if her concern was Hodges, she would be placed in another store with the opportunity for store advancement if that was her goal. Cogliano also informed the Plaintiff that he would look into her allegations with respect to Hodges to make sure Welch took appropriate action.
 The Plaintiff subsequently quit and filed suit with a charge of discrimination with the Ohio Civil Rights Commission.[1] The Defendant responded to the Commission's inquiry into the matter by stating that it viewed the Plaintiff as a good employee and would take her back immediately, either at her prior store or at a different store. The Defendant memorialized its offer to the Plaintiff in two letters, one to the Commission dated July 28, 1997 and one to Plaintiff's attorney dated November 4, 1997. The Plaintiff rejected the Defendant's offer by filing the suit herein on June 1, 1998.
 II. STANDARD FOR SUMMARY JUDGMENT In Harless v. Willis Day Warehousing Inc. (1978), 54 Ohio St.2d 64, the Ohio Supreme Court stated that for summary judgment to be appropriate, it must appear that:
 (1) There is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.
 Id. at 66; See also, Ohio Rules of Civil Procedure 56(C). The moving party has the initial burden of showing that there is no genuine issue as to any material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93; Harless, 54 Ohio St.2d at 66. Furthermore, once a moving party has satisfied its initial burden, Ohio R. Civ. P. 56(E) requires the non-moving party to demonstrate that there is a genuine issue of material fact. Dresher, 75 Ohio St. 3d at 93; Harless, 54 Ohio St.2d at 65-66. Moreover, in a motion for summary judgment a non-moving party may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial. Wing v. Anchor Media Ltd. of Texas
(1991), 59 Ohio St.3d 108.
 A trial court must examine all appropriate materials filed before ruling on a motion for summary judgment. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356. Ohio R. Civ. P. 56(C) contains an inclusive list of the appropriate materials to be considered: "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action." Ohio R. Civ. P. 56(c); Dresher 75 Ohio St. 3d at 292-93. In considering this motion for summary judgment, inferences drawn from the underlying facts will be viewed in a light most favorable to the non-moving party. Murphy, 65 Ohio St. 3d at 359; See also, Osborne v. Lyles (1992), 63 Ohio St.3d 326, 333.
 III. LAW AND ANALYSIS In its motion for summary judgment, the Defendant argues that this Court should sustain its motion because there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. It contends that it cannot be held liable for the alleged hostile work environment because it properly implemented appropriate corrective action, and such action did not manifest indifference or unreasonableness. Furthermore, the Defendant asserts that there is no evidence raising a genuine issue of material fact which supports the theory that the Plaintiff was unlawfully denied the opportunity for promotion.
 The Plaintiff asserts that there remain at least five issues of material fact which preclude this Court from awarding the Defendant summary judgment. They are: (1) when Defendant knew or should have known of Hodges' discriminatory conduct, (2) whether Defendant failed to promote Plaintiff to positions for which she was qualified on the basis of her race, (3) whether Defendant took prompt and corrective action when it knew or should have known of Hodges' discriminatory conduct, (4) whether Plaintiff was discriminated against by not being permitted to return to work with restrictions while Hodges, a Caucasian male, was so permitted, and (5) whether Hodges performed in a supervisory capacity.
 The case law regarding the Plaintiff's claim for the alleged hostile work environment is well established. The Defendant has correctly stated that "[i]n addressing claims brought under [R.C. 4112.02], it [sic] now well settled that case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable. Neely v. Franklin Cty. Aud. (1994), 97 Ohio App.3d 771. Federal courts employ the same general criteria when considering claims for racial discrimination as other forms of discrimination. Barney v. Chi Chi's, Inc. (1992), 84 Ohio App.3d 40.
 Hostile work environment cases distinguish between harassment by supervisors and harassment by co-workers. Blankenship v. Parke Life Centers, Inc. (C.A. 1997), 123 F.3d 868. In Rabidue v. Osceola Refining Co. (C.A.6 1986), 805 F.2d 611, the court held the test to be applied when an employee alleges harassment by co-workers has two parts: (1) whether the employer knew or should have known of the alleged harassment and (2) whether the employer failed to implement prompt and appropriate corrective action. Id. at 621. Whereas, in cases involving a supervisor to the complaining employee, the employer is held liable under the doctrine of respondeat superior. Pierce v. Commonwealth Life Ins. Co. (C.A.6 1994), 40 F.3d 796.
 Accordingly a key issue in this case is whether the Plaintiff has produced evidence sufficient to create a genuine issue of material fact as to whether Hodges was her supervisor. This Court finds that she has not sustained her burden. The evidence presented by the Defendant overwhelming demonstrates that Hodges had no direct supervision over the Plaintiff at store 217. The only employee at the store who supervised the Plaintiff was Romans, the store manager. The fact that Hodges may have had some hiring power is not important for this inquiry; what is important is that Hodges did not have the authority to discipline the Plaintiff. See, Blankenship v. Parke Care Centers, Inc. (C.A.6 1997), 123 F.3d 868. Furthermore, the record is devoid of evidence showing that Hodges used his alleged supervisory authority to carry out the harassment. See, Blankenship, supra; see also, Tomka v. Seiler Corp. (C.A.3 1995, 66 F.3d 1295. Therefore, the correct test to apply in this case is the "co-worker" harassment test.
 This test requires the Plaintiff produce evidence showing that the employer failed to implement prompt and appropriate corrective action. As in the cases cited by the Defendant, the Plaintiff has failed to produce such evidence. See, Blankenship supra; see also, Ward v. Bechtel Corp. (C.A.5 1997), 102 F.3d 199. The Defendant has produced an extensive amount of evidence showing that as soon as it learned of the possible harassment by Hodges it took appropriate corrective action. The evidence demonstrated that Welch, soon after he learned of the possible harassment, called both Hodges, Romans and Chambers to inform them to put a stop to the activity. These representations were confirmed to the Plaintiff in her telephone call with Cogliano two weeks later. This Court finds that the Defendant's actions did not manifest indifference nor were they unreasonable. In fact, the Defendant's actions were swift and manifested a desire to stop what was perceived as harassing activity. "An employer is only liable for * * * harassment committed by its employees if no adequate remedial action is taken." Spicer v. Com. of Va., Dept. of Corrections (C.A.9 1995), 66 F.3d 705, 710. Therefore, it is this Court's conclusion that the Defendant took the necessary steps after learning of the possible harassment and that such steps preclude the Plaintiffs claim for hostile work environment as a matter of law.
 The Plaintiff also alleges that she was denied the opportunity to be promoted despite an express desire to do so. The base [sic] of her claim is that the Defendant continually advertised for First Assistant Manager and Manager positions and hired less qualified Caucasian individuals outside of the Defendant in those positions. The Defendant correctly points out that even assuming the Plaintiff's assertions are true, her failure to take advantage of the opportunity when it subsequently was presented to her precludes her from recovering on that claim. See e.g. Ford Motor co. v. EEOC (1982), 458 U.S. 219; O'Donnell v. Georgia Osteopathic Hospital, Inc. (C.A.11 1984), 748 F.2d 1543. Therefore, the undisputed fact that the Defendant offered the Plaintiff a promotion from her present position immediately (and several subsequent times thereafter) after learning of her concerns precludes her failure to promote cause of action from that point.
 Moreover, the Plaintiff has failed to produce even a scintilla of evidence to demonstrate that she was denied promotion before the time of her resignation, in fact, she was promoted to assistant manager as soon as she passed the required examination. The evidence certainly does not point to a pattern of discrimination on the part of the Defendant. Finally, the Plaintiff's argument that the Defendant advertised for outside first assistant managers and managers does not show any form of discrimination and no Caucasian person was hired above her position in the store where she worked as a result of this advertising. Therefore, it is this Court's holding that the Plaintiff's failure to promote claim is without sufficient supporting evidence and Defendant's motion must be sustained as a matter of law.
 As a final issue, the Plaintiff argues that the Defendant forced her to come back to work with no restrictions being placed on her duties following her illness. She points to the fact that Hodges was allowed to work with restrictions following his illness and the fact that he is caucasian means that the Defendant discriminated against her regarding this issue. Again, the Plaintiff produces simply no evidence which would allow a reasonable juror to conclude that the Defendant did anything discriminatory towards the Plaintiff. Hodges medical form clearly and unambiguously stated that he could only return to work with certain restrictions. The Plaintiff's medical forms are lacking in any such reference to restrictions. There is simply no basis in law to hold the Defendant responsible for information it could not possibly have known.
 IV. CONCLUSION This Court finds that the Plaintiff has failed to present a genuine issue of material fact that would require a trier of fact, and as such, the Defendant is entitled to summary judgment as a matter of law on all of the Plaintiff's claims. Accordingly, the Defendant's motion for summary judgment is hereby SUSTAINED.
On appeal, Austin presents the following four assignments of error:
 I. THE TRIAL COURT ERRED IN FAILING TO CONSIDER WHETHER DEFENDANT HAD CONSTRUCTIVE KNOWLEDGE OF THE RACIALLY HOSTILE ENVIRONMENT.
 II. THE TRIAL COURT ERRED IN FAILING TO CONSIDER DIRECT EVIDENCE OF RACIALLY HOSTILE ENVIRONMENT.
 III. THE TRIAL COURT FAILED TO CONSIDER PLAINTIFF'S CLAIM THAT HODGES WAS TREATED MORE PREFERENTIALLY BASED UPON HIS RACE.
 IV. THE TRIAL COURT ERRED IN CONCLUDING THAT DEFENDANT HAD NOT [sic] ACTUAL KNOWLEDGE OF HODGES' CONDUCT UNTIL PLAINTIFF RESIGNED.
Significantly, Austin did not appeal from the finding by the trial court that Hodges, her alleged harasser, was a co-worker and not her supervisor. Therefore, as the trial court pointed out, the employer cannot be held liable under the all encompassing doctrine of respondeat superior, but can be held liable only if the employer knew or should have known of the alleged harassment and failed to take prompt and appropriate corrective action.
Austin's first assignment of error, that the trial court failed to consider whether the defendant had constructive knowledge of the racially hostile environment, is not supported by the record. The few allegedly harassing statements by Austin's co-worker simply failed to demonstrate actions so pervasive that they raise an inference of constructive knowledge. Brewer v.Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378, 386,701 N.E.2d 1023, 1028. Comparable isolated facts of harassment have been held insufficient to raise an inference of constructive knowledge when following the only reports of such acts to the employer, prompt and appropriate measures to address the conduct were taken. See e.g., Davis v. Monsanto Chemical Co. (1988), 858 F.2d 345, cert. denied, (1989), 490 U.S. 1110, 109 S.Ct. 3166.
The first assignment of error is overruled.
In her second assignment of error, Austin argues that an insensitive remark by the district supervisor of the defendant was not considered by the trial court as direct evidence of a racially hostile environment. We do not find this one isolated comment to be direct evidence of a racially hostile environment. Brewer v.Cleveland Bd. of Edn., supra.
The second assignment of error is overruled.
In her third assignment of error, Austin claims the trial court failed to consider her claim that her co-worker, Hodges, was treated more preferentially based upon his race. Contrary to Austin's assertion, however, the trial court expressly addressed this issue and found no evidence of preferential treatment in the respect that Ross Austin alleges. We agree with that finding.
The third assignment of error is overruled.
In her fourth and final assignment of error, Austin contends that summary judgment was improper because the defendant had direct knowledge of some of Hodges' remarks, following the complaint regarding them by Austin to her supervisor. However, the record shows that the supervisor took direct and immediate action against Hodges, and Austin made no further complaints to her supervisor until she tendered her resignation some six months later. Like the trial court, we find that the defendant here took prompt and appropriate action, and thus is precluded from liability for a claim of hostile work environment.
The fourth assignment of error is overruled.
While we have set forth and incorporated the trial court's opinion and decision, we have still, nevertheless, reviewed it on a de novo standard, and we agree with its conclusions.
The judgment is affirmed.
GRADY, P.J. and BROGAN, J., concur.
Copies mailed to:
V. Ellen Graham
Jerry S. Sallee
Brian V. Alcala
Hon. Michael T. Hall
Successor to Hon. James J. Gilvary, Deceased
[1] By the Court of Appeals: Plaintiff subsequently withdrew her complaint to the Ohio Civil Rights Commission. Lirtzman
Affidavit, Doc. 19.